**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| HOWARD BEECHAM, #B00492,      ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 13-cv-01003-MJR** |
| ) | |
| RICHARD HARRINGTON, ) | |
| C/O HAMILTON, UNKNOWN PARTY, ) | |
| MRS. BLACKMAN, C/O GILLE, ) | |
| C/O JENNINGS, LT. VEATH, ) | |
| C/O VASQUEZ, LORI OAKLEY, ) | |
| MRS. PHOENIX, UNKNOWN ) | |
| MEDICAL STAFF PERSONNEL, ) | |
| UNKNOWN DEFENDANTS, ) | |
| and DIRECTOR GODINEZ, ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM AND ORDER**</u>

**REAGAN, District Judge:**

        Plaintiff Howard Beecham, who is currently incarcerated at Menard Correctional

Center ("Menard"), brings this action pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against

numerous officials at Western, Illinois Correctional Center ("WICC") and Menard (Doc. 12).

Plaintiff is serving fifty years in prison for murder.  In his complaint, Plaintiff alleges that WICC

and Menard officials violated his constitutional rights and conspired to transfer him to Menard in

retaliation for filing grievances, among other things.  This matter comes now before the Court for

consideration of Plaintiff's complaint (Doc. 12) and his second motion for preliminary injunction

and/or temporary restraining order[1] ("TRO") (Doc. 15).  Plaintiff seeks declaratory judgment,

injunctive relief, and monetary damages.

---

[1]  Plaintiff filed his first motion for preliminary injunction and/or TRO (Doc. 1) without a complaint on
September 27, 2013.  The Court denied the motion without prejudice in an Order (Doc. 7) dated
October 3, 2013.  At the time, Plaintiff was ordered to properly commence this action by filing a

### 1.  **The Complaint**

Specifically, the complaint[2] alleges that during Plaintiff's incarceration at WICC in 2011-12, Defendants Jennings and Gille (WICC internal affairs officers) retaliated against Plaintiff for filing grievances by conspiring to transfer him to Menard (Doc. 12, pp. 6-10). According to the complaint, Defendant Jennings threatened to transfer Plaintiff after he filed a grievance requesting dental treatment on November 27, 2011, and a grievance complaining of a medical staff member's sexual misconduct on January 3, 2012 (Doc. 12, pp. 6-8).

When Plaintiff subsequently filed a grievance complaining of inadequate medical care for a knee injury on January 20, 2012, and stolen property on April 15, 2012, WICC officials targeted him for an excessive number of cell shakedowns (Doc. 12, p. 9).  According to the complaint, Plaintiff's cell was searched at least three times each week between May 3rd and September 16th, 2012.  Plaintiff was placed in segregation when he filed a grievance complaining of harassment and retaliation on October 10, 2012.

Plaintiff later learned that he was under an investigation for a fight.  He was issued a disciplinary ticket, which was expunged following a disciplinary hearing on October 12, 2012.  Plaintiff filed a police report with the Illinois State Police, requesting a TRO.  The request was ignored.

---

complaint on or before November 7, 2013.  Twice, the Court granted an extension of this deadline (Docs. 11, 14), after Plaintiff indicated that prison officials were thwarting his efforts to file a complete complaint and motion for preliminary injunction and/or TRO.  The second deadline of December 23, 2013, has now passed.  Plaintiff has filed a complaint (Doc. 12) and a second motion for preliminary injunction and/or TRO (Doc. 15), with accompanying exhibits.  This Order addresses both.  Although CM/ECF identifies Doc. 12 as an "amended complaint," it is, in fact, the only complaint Plaintiff has filed in this action.  Therefore, the Court will refer to it as "the complaint."

[2] The complaint addresses numerous incidents occurring over the course of more than two years at WICC and Menard.  It identifies many individuals, who are not named as defendants in this action.  Often, only passing references are made to these events and individuals.  Because the complaint focuses on claims arising from Plaintiff's transfer to Menard and constitutional deprivations occurring thereafter, this Order will not address the complaint's occasional references to events occurring at WICC prior to Plaintiff's transfer.

On February 6, 2013, Plaintiff was subjected to a strip search (Doc. 12, p. 9). During the search, his eyeglasses were confiscated and sent home.  Defendant Gille and another officer told Plaintiff that "they had a surprise for [him]" (Doc. 12, p. 10).

One month later, on March 13, 2013, Plaintiff was placed in segregation--this time, for his alleged involvement in a fight that occurred outside of his presence (Doc. 12, p. 10). Plaintiff was transferred to Menard the following day, without receiving a disciplinary ticket or a hearing.

It was not until April 2, 2013, that Plaintiff received a disciplinary report for his alleged involvement in a fight at WICC (Doc. 12, p. 13).  He was charged with conspiring to commit a violent assault.  Until he received the ticket, Plaintiff was unaware of any investigation giving rise to the report.  The report incorrectly stated that Plaintiff refused to sign it.  It provided no details, such as the time, date, or location of the alleged fight or the conduct observed.  As a result, Plaintiff could not prepare his defense prior to his disciplinary hearing.

Defendant Veath, the chair of Menard's adjustment committee, conducted the hearing more than fourteen days after the commission of the offense.  He refused to acknowledge Plaintiff's plea (Doc. 12, p. 19).  He also failed to examine the evidence (Doc. 12, p. 20). Plaintiff was found guilty at his adjustment committee hearing (Doc. 12, p. 16).  However, the adjustment committee's summary report provided no justification for the committee's decision; it also did not state why exonerating evidence received from a confidential informant was disregarded (Doc. 12, pp. 15, 19).  Defendant Vasquez denied Plaintiff's request for a copy of the written statement that Plaintiff submitted to the adjustment committee.

At the time of his transfer, Plaintiff was stripped of his shoes and all of his personal property.  The complaint estimates the cost of the missing property to be $107.97.

Plaintiff was later denied access to property that is typically allowed to inmates in segregation at Menard (Doc. 12, p. 13).  Defendants Godinez (Illinois Department of Corrections' ("IDOC") director), Oakley (Menard's grievance counselor/grievance committee), and Phoenix (grievance counselor) have denied Plaintiff's grievances addressing property issues (Doc. 12, p. 15).

Upon his arrival at Menard, Plaintiff was forced to walk barefoot through mud into the prison (Doc. 12, p. 11).  As he entered the first building and turned a corner, Defendant Unknown Menard Lieutenant "threw his elbow high and struck [Plaintiff] in the mouth." Defendant Unknown Menard Prison Guard used foul language and racial epithets to threaten bodily harm.  During intake, Plaintiff was ordered to place his knees on an iron stool, which caused him to suffer knee pain.  When Plaintiff refused to follow the order, Defendant Unknown Menard Prison Guard struck Plaintiff in the face and head.

Plaintiff was assigned to a cell with a "filthy" mattress.  He was given no bed roll. Plaintiff did not receive toilet paper, a toothbrush, toothpaste, or soap until three days after his arrival (Doc. 12, p. 12).  He did not receive a blanket, sheet, pillow case, or towel until three days after that, and these items smelled of another person's body odor.  Since March 2013, Plaintiff has suffered from "something crawling all over [his] body and biting" him, which he identifies as lice.  On March 26th and April 2nd, 2013, Plaintiff used Styrofoam trays as shower shoes because the shower was "caked with hair, blood, old soap, etc."  From July 28th until August 8th, he was placed in a cell without any lights.  His requests to purchase toothbrushes were denied for five months, and his commissary expenditures were limited.  On July 10, 2013, Defendant Hamilton (Menard correctional officer) opened Plaintiff's mail in front of him and then refused to give it to Plaintiff, despite the mailroom staff's prior approval of the mail (Doc. 12, p. 18).

Defendant Menard Medical Staff have refused to treat Plaintiff for lice, a bloody stool, acid reflux, breathing difficulties, heartburn, gas, a receding tooth, testicular and rectal pain, and weight loss (Doc. 12, pp. 17-18).   Instead, they tell Plaintiff to submit sick call requests, which they allegedly ignore.

According to the complaint, Defendants have ignored more than 200 grievances and medical complaints (Doc. 12, p. 19).  Plaintiff filed over eighteen grievances addressed to Defendants Harrington and Godinez, which he submitted to unknown correctional officers for delivery (Doc. 12, p. 18).  Defendants Oakley and Phoenix also ignored Plaintiff's grievances (Doc. 12, p. 20).

## 2.   Merits Review Under § 1915A

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.   Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   The claim of entitlement to relief must cross "the line between possibility and plausibility."   *Id*. at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept

factual allegations as true, some factual allegations may be so sketchy or implausible that they

fail to provide sufficient notice of a plaintiff's claim.  *Smith v. Peters*, 631 F.3d 418, 419

(7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should

not accept as adequate abstract recitations of the elements of a cause of action or conclusory

legal statements." *Id*.  At the same time, however, the factual allegations of a *pro se* complaint

are to be liberally construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821

(7th Cir. 2009).  After carefully reviewing the complaint and supporting exhibits, the Court finds

it appropriate to exercise its authority under § 1915A; thus, portions of this action are subject to

summary dismissal.

### 3.   <u>Discussion</u>

**A.      Claims**

The Court finds it convenient to divide the complaint into twelve counts.  The

parties and the Court will use these designations in all future pleadings and orders, unless

otherwise directed by a judicial officer of this Court.

<u>Count 1</u>:   Fourteenth Amendment due process claim against Defendants Veath

and Vasquez for denying Plaintiff adequate notice and a hearing on his disciplinary ticket for

conspiracy to commit a violent assault;

<u>Count 2</u>:   Eighth Amendment claim for unconstitutional conditions of

confinement at Menard;

<u>Count 3</u>: Eighth Amendment claim for deliberate indifference to serious medical

needs;

Count 4:  Retaliation claim against Defendants Jennings and Gille for punishing Plaintiff for filing grievances;

Count 5:  Conspiracy claims against Defendants;

Count 6:  Eighth Amendment claim against Defendant Unknown Menard Lieutenant for elbowing Plaintiff and Defendant Unknown Menard Prison Guard for hitting Plaintiff in the face during intake;

Count 7:  Fourteenth Amendment equal protection claims against Defendants for issuing Plaintiff disciplinary tickets, providing an inadequate hearing, and interfering with his mail;

Count 8:  Intracorporate conspiracy claims against Defendants pursuant to 42 U.S.C. §§ 1985 and 1986;

Count 9:  Fourteenth Amendment claim against Defendants for confiscation of Plaintiff's personal property;

Count 10:  Fourteenth Amendment claim against Defendants for ignoring Plaintiff's grievances;

Count 11:  First Amendment claim against Defendant Hamilton and Defendant Mailroom Supervisors for interfering with Plaintiff's mail; and

Count 12: Fourteenth Amendment claim for a punitive prison transfer to Menard.

Count 1 – Denial of Due Process

After carefully considering the allegations in the complaint, the Court finds that it articulates a colorable Fourteenth Amendment due process claim (**Count 1**) against Defendant Veath at this early stage in litigation.  Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner

twenty-four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). The complaint suggests that the first, third, and fourth requirements were not satisfied (Doc. 12, pp. 19-20).

Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). To determine whether this standard has been met, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007). According to the complaint, the adjustment committee's summary report provided no justification for the committee's decision or state why exonerating evidence received from a confidential informant was disregarded (Doc. 12, pp. 15, 19). Based on the foregoing, Plaintiff shall be allowed to proceed with Count 1 against Defendant Veath.

However, he shall not be allowed to proceed with Count 1 against Defendant Vasquez or any other defendants. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). The complaint does not allege that any defendants, besides Defendants Veath and Vasquez, had any involvement in the

8

issuance of the disciplinary ticket or hearing.  With regard to Defendant Veath, the complaint merely alleges that he refused to provide Plaintiff with a copy of a written statement that Plaintiff submitted to the adjustment committee.  Without more, this conduct does not rise to the level of a constitutional violation.  Accordingly, Count 1 is limited to a claim against Defendant Veath.

Count 2 – Unconstitutional Conditions of Confinement

> The Court finds that the complaint also articulates a colorable Eighth Amendment claim for unconstitutional conditions of confinement (**Count 2**) against Menard's warden, Defendant Harrington, in his official capacity.  Relevant to this claim, the Eighth Amendment has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994).  As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime.  *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  The Constitution also prohibits punishment that is totally without penological justification.  *Gregg*, 428 U.S. at 183.

> Not all prison conditions trigger Eighth Amendment scrutiny--only deprivations of basic human needs like food, medical care, sanitation and physical safety.  *Rhodes,* 452 U.S. at 346; s*ee also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992).  Prisoners cannot expect the "amenities, conveniences, and services of a good hotel."  *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988).  However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable

human need such as food, warmth, or exercise. . . ." *Wilson v. Seiter,* 501 U.S. 294, 304 (1991). As pleaded, the conditions in the complaint (e.g., denial of toothbrush purchase for months at a time, denial of bedding, denial of toiletries, lack of cell lighting, filthy mattress, lice, etc.), meet the threshold requirement of an Eighth Amendment claim.

However, the complaint does not identify any particular defendant who personally participated in this constitutional violation (Doc. 12, pp. 10-12). As explained above, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper*, 430 F.3d at 810 (citations omitted). Merely naming a defendant in the caption is insufficient to state a claim. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Therefore, in terms of individual liability, the complaint fails to state a claim against any individual defendant based on unconstitutional conditions of confinement.

However, the complaint seeks injunctive relief and names Menard's warden, Defendant Harrington, in his individual and official capacities. Absent any individual liability, a warden can still be liable in his official capacity, but only for purposes of securing injunctive relief. *See Delaney v. DeTella*, 256 F.3d 679, 687 (7th Cir. 2001) (warden could be liable for injunctive relief relative to a prison policy imposing an unconstitutional condition of confinement). Although the Court takes no position on the ultimate merits of this claim, Plaintiff shall be allowed to proceed with Count 2 against Defendant Harrington in his official capacity.

Count 3 – Deliberate Indifference to Medical Needs

The complaint articulates a viable Eighth Amendment medical needs claim (**Count 3**) against Defendants Unknown Menard Medical Staff and against Defendant Harrington, but only in his official capacity for injunctive relief. Relevant to Plaintiff's claim, the Supreme Court has recognized that "deliberate indifference to serious medical needs of

prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*).

> Deliberate indifference involves a two-part test. The plaintiff must show that
> (1) the medical condition was objectively serious, and (2) the state officials acted
> with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The complaint appears to satisfy the objective prong of this analysis. The Seventh Circuit has held that a medical need is objectively "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). The complaint alleges that Plaintiff suffers from untreated lice, bloody stools, knee pain, acid reflux, breathing difficulties, heartburn, a "receding" tooth, and weight loss. The complaint satisfies the objective component of an Eighth Amendment medical needs claim.

However, the subjective component must also be satisfied. To establish deliberate indifference, Plaintiff "must demonstrate that prison officials acted with a 'sufficiently culpable state of mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson*, 501 U.S. at 297). Officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834). Plaintiff is not required to establish that the officials "intended or desired the harm that transpired," but to instead show that they "knew of a substantial risk of harm . . . and disregarded it." *Greeno*, 414 F.3d at 653. The complaint suggests that Defendants Unknown

Menard Medical Staff knew of and intentionally disregarded Plaintiff's need for medical treatment. With respect to these defendants, the complaint also satisfies the subjective component of an Eighth Amendment medical needs claim. Accordingly, Plaintiff shall be allowed to proceed with Count 3 against Defendants Unknown Menard Medical Staff. Plaintiff will eventually need to identify these defendants with specificity, as instructed below. He shall also be allowed to proceed with Count 3 against Defendant Harrington, but only in his official capacity for injunctive relief.

Plaintiff shall not be allowed to proceed with Count 3 against any other defendants. The only other defendant identified in the complaint as depriving Plaintiff of access to necessary medical care is Defendant Unknown Menard Lieutenant, who failed to secure treatment of Plaintiff's injuries after assaulting him. However, the complaint is devoid of any details regarding the type or scope of these injuries. Without more, the Court cannot assess whether the injuries were "serious" and whether Defendant Unknown Menard Lieutenant knew about them and disregarded them. Therefore, the complaint fails to state an Eighth Amendment medical needs claim against Defendant Unknown Menard Lieutenant. It also fails to suggest that any other defendant personally participated in depriving Plaintiff of necessary medical care for a serious injury. Accordingly, Count 3 shall be limited to Defendants Unknown Menard Medical Staff and Defendant Harrington, in his official capacity for injunctive relief.

Count 4 – Retaliation

The complaint also states a retaliation claim (**Count 4**) against Defendants Jennings and Gille. In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s).

12

*Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Plaintiff must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the Defendant's decision to take the retaliatory action.  *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).  The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice.  *Higgs*, 286 F.3d at 439.  Here, the complaint specifically alleges that Defendants Gille and Jennings retaliated against Plaintiff for filing grievances by filing false disciplinary reports against him, placing him in segregation, allowing excessive cell searches, and having him transferred to Menard.  The allegations are sufficient to support a retaliation claim at this early stage in the case. Accordingly, Plaintiff shall be allowed to proceed with Count 4 against Defendants Gille and Jennings.

Plaintiff shall not be allowed to proceed with a retaliation claim against any other defendants.  The complaint does not raise sufficient allegations to suggest a causal connection between a protected activity and retaliatory conduct by any other particular defendant. Without drawing these basic connections, the complaint fails to state a claim for relief against anyone else.  Accordingly, Count 4 is limited to Defendants Gille and Jennings.

Count 5 – Conspiracy

The complaint states a viable conspiracy claim (**Count 5**) against Defendants Gille and Jennings.  According to the allegations in the complaint, both Defendants conspired to retaliate against Plaintiff for filing grievances.  Civil conspiracy claims are cognizable under

§ 1983.  *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under section 1983).  "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ."  *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002).  *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002).  The complaint meets these basic pleading requirements with respect to Defendants Jennings and Gille.

However, this claim fails against all other defendants.  Conspiracy is not an independent basis of liability in §1983 actions.  *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).  "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution."  *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).  Therefore, the conspiracy claim fails as it relates to all of the dismissed claims.  With respect to those claims that have been allowed to proceed, the allegations fail to demonstrate, or even suggest, a conspiracy on the part of any defendants.  Accordingly, Count 5 shall be limited to a claim against Defendants Gille and Jennings.

Count 6 – Excessive Force

The complaint articulates a viable claim against Defendants Unknown Menard Lieutenant and Unknown Menard Prison Guard for their alleged use of excessive force (**Count 6**) against Plaintiff during intake at Menard.  To the extent Plaintiff seeks injunctive relief, he shall also be allowed to proceed against Defendant Harrington as well, but only in his official capacity.  The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983.  *See Wilkins v. Gaddy*, 559 U.S. 34 (2010);

*DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).  An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).  An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).  According to the complaint, Defendant Unknown Menard Lieutenant elbowed Plaintiff hard enough to knock him to the floor.  Defendant Unknown Menard Prison Guard hit Plaintiff in the face and head.  The complaint does not suggest that any other defendant used excessive force against Plaintiff.  Although the Court takes no position regarding the ultimate merits of these claims, Plaintiff shall be allowed to proceed with Count 6 against Defendants Unknown Menard Lieutenant and Unknown Menard Prison Guard.

Count 7 – Equal Protection

The complaint fails to state an equal protection claim (**Count 7**) against Defendants.  It merely alleges that Plaintiff was denied equal protection (i.e., when he was issued a disciplinary ticket, when he was denied an adequate disciplinary hearing, when his mail was intercepted, etc.).  Beyond this blanket allegation, however, the complaint provides no further explanation of Plaintiff's claim.

A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated

against him.'"  *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S.

935 (1987) (citing *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir. 1982)).

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action.  A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation.  Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences.  It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d

1091, 1104 (7th Cir. 1982)).  The complaint does not allege that Plaintiff was part of a protected

class or that he was singled out for disparate treatment because of his membership in that class.

Further, the complaint fails to state a class-of-one equal protection claim.  To state a claim, an

individual must allege that he was "intentionally treated differently from others similarly situated

and that there is no rational basis for the difference in treatment."  *Swanson v. Chetek*, 719 F.3d

780, 784-85 (7th Cir 2013) (quoting *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)).

No allegations suggest that Plaintiff was treated differently than other similarly situated

individuals.  Accordingly, the equal protection claim fails, and Count 7 shall be dismissed

against all defendants.

Count 8 – Intracorporate Conspiracy

      The complaint also fails to state an intracorporate conspiracy claim under

42 U.S.C. §§ 1985 and 1986 (**Count 8**) against Defendants.  Under the intracorporate conspiracy

doctrine, a § 1985 conspiracy claim "cannot exist solely between members of the same entity."

*Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999).  According

to the complaint, Defendants are all employed by the Illinois Department of Corrections

("IDOC"), and they were all working in the IDOC's interest.  Therefore, the defendants cannot

be sued under § 1985 for conspiracy.  *See id.  See also Wright v. Ill. Dep't Of Children and Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994).  Further, "the function of a conspiracy claim under 42 U.S.C. § 1985(3) is to 'permit recovery from a private actor who has conspired with state actors.'" *Turley v. Rednour*, 729 F.3d 645, 649 n.2 (7th Cir. 2013) (quoting *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)).  Section 1985(3) prohibits a conspiracy to deprive another of equal protection under the law, but the conspiracy must be motivated by racial, or other class-based discriminatory animus.  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002).  The complaint contains no allegations to this effect.  Further, when a plaintiff fails to state a § 1985 claim, his § 1986 claim fails as well.  *See Smith v. Gomez*, 550 F.3d 613, 617-618 (7th Cir. 2008); *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992).  Accordingly, Count 8 shall be dismissed against all defendants.

Count 9 – Personal Property

The complaint fails to state a claim for confiscation of Plaintiff's personal property (**Count 9**).  According to the complaint, property worth more than $100 was confiscated from Plaintiff during his transfer to Menard.  These items have not been returned.

The only constitutional right that might be implicated by these facts is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law.  To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff has no civil rights claim.  *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).  The Seventh Circuit has found that Illinois

provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Count 9 shall be dismissed with prejudice against Defendants, but Plaintiff may pursue his property claim in the Illinois Court of Claims, should he choose to do so.

Count 10 – Ignoring Grievances

The complaint does not state an independent claim against any defendants for failing to respond, or provide satisfactory responses, to Plaintiff's numerous grievances (**Count 10**). According to the complaint, Defendants Godinez and Harrington failed to acknowledge at least eighteen grievances filed by Plaintiff on various matters. Defendants Oakley and Phoenix allegedly ignored Plaintiff's grievances. Other unknown correctional officers failed to forward his grievances to Defendants Godinez and Harrington. In all, the complaint alleges that 200 grievances and/or medical complaints were ignored.

These allegations state no claim upon which relief can be granted. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Plaintiff shall not be allowed to proceed with

Count 10 against Defendants based on their failure to respond to his grievances,[3] and this claim shall be dismissed with prejudice.

Count 11 – Mail Interference

The complaint fails to state a claim against Defendants Hamilton and Mailroom Supervisors, or any other defendants, for mail interference.   According to the allegations, Defendant Hamilton read Plaintiff's mail in his presence and then refused to give it to him on July 10, 2013 (Doc. 12, pp. 5, 6, 18).  The complaint further alleges that "Defendants" refused to mail out Plaintiff's legal documents while charging him postage, although it is not clear when and how often this occurred (Doc. 12, p. 5).

The complaint fails to state a claim for mail interference or tampering.  According to the Seventh Circuit,

> . . . [i]nmates have a First Amendment right both to send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974); *Rowe*, 196 F.3d at 782.  An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the courts.  *Rowe*, 196 F.3d at 782.  Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence.  *See Wolff*, 418 U.S. at 577, 94 S. Ct. 2963; *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 305-06 (7th Cir.1993).

*Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005).  However, the inadvertent or negligent opening of an occasional legal letter is not actionable.  *See, e.g., Bryant v. Winston*, 750 F. Supp. 733 (E.D. Va. 1990).  Furthermore, "merely alleging an isolated delay or some other relatively short-term . . . disruption in the delivery of inmate reading materials will not support . . . a cause of action grounded upon the First Amendment."  *Rowe*, 196 F.3d at 782.

---

[3] This should not be confused with Plaintiff's Eighth Amendment medical needs claim (Count 3) against Defendants Unknown Medical Staff for ignoring Plaintiff's requests for medical treatment.  Plaintiff has been allowed to proceed with Count 3.

Based on the allegations in the complaint, Defendant Hamilton interfered with Plaintiff's mail on one occasion.  He opened Plaintiff's mail in his presence.  This single incident is not sufficient to support a claim against Defendant Hamilton under the circumstances.  Likewise, it is unclear who delayed Plaintiff's outgoing mail, or how often.  These allegations are insufficient to support a mail interference claim against any other defendants.  Further, Plaintiff has failed to demonstrate that he was harmed in any way.  Accordingly, Count 11 shall be dismissed without prejudice against all of the defendants.

Count 12 – Punitive Prison Transfer

Plaintiff's punitive prison transfer claim (**Count 12**) fails to pass muster, even at this early stage in litigation.[4]   "[P]risoners possess neither liberty nor property in their classifications and prison assignments.  States may move their charges to any prison in the system."  *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)).  *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison).  Therefore, the complaint fails to state a claim that Plaintiff's prison transfer violated his constitutional rights.  Count 12 shall be dismissed with prejudice against all of the defendants.

In summary, Plaintiff shall be allowed to proceed with: (1) Count 1: Fourteenth Amendment due process claim against Defendant Veath for denying Plaintiff adequate notice and a hearing on his disciplinary ticket for conspiracy to commit a violent assault; (2) Count 2: Eighth Amendment claim for unconstitutional conditions of confinement at Menard against Defendant Harrington, but only in his official capacity for injunctive relief; (3) Count 3: Eighth Amendment claim for deliberate indifference to serious medical needs against Defendants

_____

[4] Although Count 12 shall be dismissed, Plaintiff has been allowed to proceed with his retaliation claim in Count 4, which includes the claim that his transfer was made with an improper retaliatory motive.

Unknown Menard Medical Staff and Defendant Harrington, but only in his official capacity for injunctive relief; (4) Count 4: Retaliation claim against Defendants Jennings and Gille for punishing Plaintiff for filing grievances; (5) Count 5: Conspiracy claim against Defendants Jennings and Gille, and; (6) Count 6: Eighth Amendment claim against Defendant Unknown Menard Lieutenant for elbowing Plaintiff, Defendant Unknown Menard Prison Guard for hitting Plaintiff in the face, and Defendant Harrington in his official capacity for injunctive relief.

All other claims shall be dismissed. These claims include: (1) Count 7: Fourteenth Amendment equal protection claims against Defendants for issuing Plaintiff disciplinary tickets, providing an inadequate hearing, and interfering with his mail; (2) Count 8: Intracorporate conspiracy claims against Defendants pursuant to 42 U.S.C. §§ 1985 and 1986; (3) Count 9: Fourteenth Amendment claim against Defendants for confiscation of Plaintiff's personal property; (4) Count 10: Fourteenth Amendment claim against Defendants for ignoring Plaintiff's grievances; (5) Count 11: First Amendment claim against Defendant Hamilton and Defendant Mailroom Supervisors for interfering with Plaintiff's mail; and (6) Count 12: Fourteenth Amendment claim for a punitive prison transfer to Menard. In addition, Defendants Godinez, Hamilton, Blackman, Vasquez, Oakley, and Phoenix shall be dismissed from this action without prejudice.

**B.     Severance**

Although Counts 1, 2, 3, 4, 5, and 6 all state colorable claims, they cannot proceed together in the same action. In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform

Act.  *George,* 507 F.3d at 607 (citing 28 U.S.C. § 1915(b), (g)).  Plaintiff's complaint contains an unwieldy twelve claims against fourteen defendants.  Only six of these claims survive this threshold review.

Of the six surviving claims, two (Counts 4 and 5) are asserted against officials at WICC, i.e., Defendants Jennings and Gille.  The remaining claims (Counts 1, 2, 3, and 6) are asserted against Menard officials, including numerous unknown defendants.  Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever Counts 4 and 5 of Plaintiff's complaint from Counts 1, 2, 3, and 6, and shall open a new case with a newly-assigned case number for Claims 4 and 5.  However, Plaintiff shall have an opportunity to voluntarily dismiss the newly severed cases if he does not wish to proceed on those claims or incur the additional filing fees.  Plaintiff shall also note that if any of the claims in Counts 1, 2, 3, and 6 prove to be unrelated to one another and involve different defendants, they may be subject to severance under *George v. Smith,* 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

**C.      Identification of Unknown Defendants**

Plaintiff has been allowed to proceed with his claims against certain as yet unidentified defendants, including Defendants Unknown Menard Medical Staff and Unknown Menard Prison Lieutenant/Guard.  However, he is obligated to identify these individuals, if he wishes to proceed with his Eighth Amendment medical needs claim (Count 3) and excessive force claim (Count 6) against them.  Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to

engage in limited discovery to ascertain the identity of those defendants.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).

Accordingly, Plaintiff shall identify the specific Menard medical staff member(s), lieutenant, and prison guard who violated his constitutional rights through expedited discovery and submit an amended complaint naming them with specificity.  Plaintiff is advised that any proposed amendments or supplements to his complaint must be properly filed pursuant to Federal Rule of Civil Procedure 15(a) or (d).  In addition, pursuant to Southern District of Illinois Local Rule 15.1, the proposed amendment to a pleading or amended pleading itself must be submitted at the time the motion to amend is filed.  The Court will not accept piecemeal amendments to the original complaint.  The amended complaint supersedes and replaces the original complaint.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004) (citing *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)).

### 4.  <u>Pending Motions</u>

A.  **Motion to Appoint Counsel (Doc. 2)**

Plaintiff has filed a motion to appoint counsel (Doc. 2), which shall be **REFERRED** to a United States Magistrate Judge.

B.  **Preliminary Injunction/TRO (Doc. 15)**

Plaintiff has also filed a second motion for preliminary injunction and/or TRO (Doc. 15).  In the motion, Plaintiff seeks preliminary injunctive relief and/or a TRO against Defendants Godinez, Harrington, Hamilton, Unknown Prison Guards, Unknown Medical Staff, and Unknown Commissary Supervisors on several grounds (Doc. 15, pp. 1-3).   First, Plaintiff claims that Defendants arbitrarily denied and/or tampered with his mail (Doc. 15, p. 1).  Second, he claims that Defendants limited his commissary purchases to $15.00 and denied his requests to

purchase toothbrushes.  Third, Plaintiff claims that he was wrongfully detained in segregation beyond the date originally scheduled for his release, based on a disciplinary hearing that violated his due process rights (Doc. 15, pp. 1-2).  Fourth, he was denied medical treatment for numerous ailments, including pain medication for a knee injury and medical treatment for a bloody stool, lice, acid reflux, breathing difficulties, testicular pain, and a loose tooth (Doc. 15, p. 2).  Fifth, Defendants ignored and/or denied his grievances and letters addressing these issues.

In considering whether to grant injunctive relief, a district court is obligated to weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence.  Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction.  *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999).

Without expressing any opinion on the ultimate merits of Plaintiff's claim for relief, the Court finds that a preliminary injunction and/or temporary restraining order should *not* be issued at this time.  This Order dismisses Plaintiff's claims for mail tampering and ignoring grievances.  In addition, the Court finds that Plaintiff's commissary spending limits claim also fails because Plaintiff has no property or liberty interest in commissary spending limits.

Plaintiff has been allowed to proceed with a Fourteenth Amendment due process claim (Count 1) for the issuance of a disciplinary ticket and his disciplinary hearing.  He has also been allowed to proceed with an Eighth Amendment conditions of confinement claim, which

24

includes his claim that his requests to purchase toothbrushes have been denied (Count 2). Plaintiff has also been allowed to proceed with an Eighth Amendment medical needs claim (Count 3). With respect to these claims, the motion for preliminary injunction and/or TRO does not set forth specific facts demonstrating the likelihood of any immediate or irreparable harm, nor do they meet any of the remaining criteria outlined above. *See* FED. R. CIV. P. 65(b)(1)(A). Accordingly, Plaintiff's second motion for a preliminary injunction and/or TRO (Doc. 15) is **DENIED**.

## 5.     Disposition

**IT IS HEREBY ORDERED** that the Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 15) is **DENIED** without prejudice.

**IT IS ALSO ORDERED** that **COUNTS 9, 10,** and **12** are **DISMISSED with prejudice** for failure to state a claim upon which relief can be granted. **COUNTS 7, 8,** and **11** are **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted.

**IT IS ORDERED** that Defendants **GODINEZ, HAMILTON, BLACKMAN, VASQUEZ, OAKLEY,** and **PHOENIX** are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNTS 4** and **5**, which are unrelated to Counts 1, 2, 3 and 6, are **SEVERED** into a new case. The new case presents the following claims:

COUNT 4:     **Retaliation claim against Defendants Jennings and Gille for punishing Plaintiff for filing grievances; and**

COUNT 5:     **Conspiracy claim against Defendants Jennings and Gille.**

The new case **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings. In the new case, the Clerk is **DIRECTED** to file the following documents:

(1)     This Memorandum and Order;

(2)     Amended[5] Complaint (Doc. 12); and

(3)     Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 4).

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with the newly-opened cases, he must notify the Court in writing on or before February 10, 2014.  **Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he will be responsible for an additional $400.00 filing fee in the new case.**  Service shall not be ordered on Defendants Jennings and Gille in those cases until after the deadline for Plaintiff's response.  Plaintiff should also be aware that filing an amended complaint or a new case may result in the imposition of filing fees for each severed cause in the amount of $400.00 per case under *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

**IT IS FURTHER ORDERED** that <u>the only claims remaining in this action are COUNT 1: Fourteenth Amendment due process claim against Defendant Veath</u> for denying Plaintiff adequate notice and a hearing on his disciplinary ticket for conspiracy to commit a violent assault; <u>**COUNT 2: Eighth Amendment claim against Defendant Harrington for unconstitutional conditions of confinement at Menard**</u>, but only in his official capacity for injunctive relief; <u>**COUNT 3: Eighth Amendment claim for deliberate indifference to serious medical needs against Defendants Unknown Menard Medical Staff and Defendant Harrington**</u>, but only in his official capacity for injunctive relief; and <u>**COUNT 6: Eighth Amendment claim against Defendant Unknown Menard Lieutenant for elbowing Plaintiff, Defendant Unknown Menard Prison Guard for hitting Plaintiff in the face, and Defendant Harrington**</u> in his official capacity for injunctive relief.  This case shall

---

[5] Again, although designated as an "amended" complaint, this document is actually the only complaint filed in this action.

now be captioned as: **Howard Beecham, Plaintiff, vs. Richard Harrington, Lt. Veath, Unknown Menard Medical Staff, Unknown Menard Lieutenant, and Unknown Menard Prison Guard, Defendants.**

      **IT IS FURTHER ORDERED** that Defendants **GILLE** and **JENNINGS** are **TERMINATED** from ***this*** action with prejudice.

      **IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **VEATH** and **HARRINGTON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the amended complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

      With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

      Service shall not be made on the Unknown Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these

individuals.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate for further pre-trial proceedings, including a decision on Plaintiff's motion to appoint counsel (Doc. 2).

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the

Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

        Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

        **IT IS SO ORDERED.**

        **DATED:  January 10, 2014**

                                    **s/ MICHAEL J. REAGAN**
                                    **U.S. District Judge**